**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HOMEVESTORS OF AMERICA, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 15-cv-3616 |
| | § | |
| **ROBYN THOMPSON,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

HomeVestors of America, Inc. ("HomeVestors") files this Original Complaint against Robyn Thompson as follows:

**PARTIES**

1. Plaintiff HomeVestors is a Delaware corporation with its principal place of business at 6500 Greenville Ave. Ste. 400, Dallas, TX 75206-1021.

2. Defendant Robyn Thompson ("Thompson" or "Defendant") is an individual who does business individually and as "The Queen of Rehab." Thompson resides in the State of Florida and may be served with process by serving her in person at 9250 NW 145th Rd., Morriston, FL 32668, or wherever else she may be found.

**JURISDICTION AND VENUE**

3. This court has jurisdiction over the subject matter under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has pendent jurisdiction of claims arising under state law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

_____
**PLAINTIFF'S ORIGINAL COMPLAINT– Page 1**

4. On information and belief, Defendant regularly and systematically conducts business in the state of Texas and in this District by advertising and soliciting customers for real estate services through, among other means, the World Wide Web. Accordingly, Defendant is subject to the personal jurisdiction of this Court.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial portion of the acts and omissions complained of herein occurred in this District.

## FACTS

**A.   HomeVestors's UGLY Family of Marks.**

6. HomeVestors and its related companies are in the business of providing, among others, real estate services, namely real estate acquisition, and real estate financing services, and providing franchising services, namely, offering technical assistance in establishing, operating, marketing and developing franchised businesses that purchase, finance and sell residential real estate (the "HomeVestors Services").

7. HomeVestors is the owner of, among others, the unique designations "UG," "WE BUY UGLY HOUSES," "WE BUY UGLY HOUSES AND MAKE THEM NICE AGAIN & DESIGN," "WE BUY UGLY HOUSES. HOMEVESTORS & (H) DESIGN," "UGLY'S OK," "UG BUYS UGLY HOUSES," "UG WITH HOUSE DESIGN," "COMPRAMOS CASAS FEAS," "THE GOOD, THE BAD, AND THE UGLY," "WE BUY THE GOOD, THE BAD, AND THE UGLY," "SOLUTIONS FOR UGLY SITUATIONS," "THE UGLIEST HOUSE OF THE YEAR," "UG INVESTS.COM," "UG SELLS HOUSES TOO," "UG SELLS UGLY HOUSES," "UGLY OPPORTUNITIES" and "WE SELL UGLY HOUSES" in word and/or design formats (collectively, the "UGLY Family of Marks"), each of which it uses in interstate commerce in connection with the HomeVestors Services.

_____
**PLAINTIFF'S ORIGINAL COMPLAINT– Page 2**

8.  HomeVestors has used the unique trademarks and service marks "WE BUY UGLY HOUSES" and "WE BUY UGLY HOUSES & (H) DESIGN" in interstate commerce in connection with the HomeVestors Services since at least as early as March 2000. HomeVestors has also used the unique trademarks and service marks "WE BUY UGLY HOUSES AND MAKE THEM NICE AGAIN" in interstate commerce in connection with the HomeVestors Services since at least as early as January 2001. HomeVestors has further used the unique designation "UGLY'S OK" in interstate commerce in connection with the HomeVestors Services since at least as early as January 2002.

9.  HomeVestors has used the unique trademarks and service mark "UG WITH HOUSE DESIGN" in interstate commerce in connection with the HomeVestors Services since at least as early as January, 2003. HomeVestors also began using the unique designation "UG BUYS UGLY HOUSES" in interstate commerce in connection with the HomeVestors Services at least as early as January 2004. HomeVestors has used the unique trademarks and service mark "UG SELLS HOUSES TOO" in interstate commerce in connection with the HomeVestors Services since at least as early as September, 2006. HomeVestors has used the unique trademarks and service mark "UG INVESTS.COM" in interstate commerce in connection with the HomeVestors Services since at least as early as July 2007.

10. HomeVestors has used the unique designations "WE SELL UGLY HOUSES" in interstate commerce in connection with the HomeVestors Services since at least July, 2014. HomeVestors has used the unique designations "UG SELLS UGLY HOUSES" in interstate commerce in connection with the HomeVestors Services since at least November, 2014. HomeVestors has used the unique trademarks and service marks "I (HEART DESIGN) UGLY HOUSES" in interstate commerce in connection with the HomeVestors Services since at least as early as October, 2014.

___

11. HomeVestors has used the unique trademarks and service mark "SOLUTIONS FOR UGLY SITUATIONS" in interstate commerce in connection with the HomeVestors Services since at least as early as January 2006. HomeVestors has used the unique trademarks and service mark "THE UGLIEST HOUSE OF THE YEAR" in interstate commerce in connection with the HomeVestors Services since at least as early as October, 2007. HomeVestors has used the unique trademarks and service mark "UGLY OPPORTUNITIES" in interstate commerce in connection with the HomeVestors Services since at least as early as August, 2011.

12. HomeVestors has used the unique trademarks and service marks "THE GOOD, THE BAD, AND THE UGLY," and "WE BUY THE GOOD, THE BAD, AND THE UGLY" in interstate commerce in connection with the HomeVestors Services since at least as early as March, 2007. HomeVestors has used the unique trademarks and service mark "COMPRAMOS CASAS FEAS," in interstate commerce in connection with the HomeVestors Services since at least as early as October 2004.

13. HomeVestors's ownership of the UGLY Family of Marks is in part evidenced by U.S. Patent and Trademark Office Registration Nos. 2,761,385, 2,794,480, 2,797,374, 2,797,429, 2,827,136, 2,935,916, 2,956,744, 2,982,363, 2,988,337, 2,999,705, 2,999,978, 3,061,604, 3,099,814, 3,185,390, 3,188,593, 3,263,978, 3,307,918, 3,350,752, 3,438,769, 3,641,361, 3,641,362, 4,313,868, 4,551,942, 4,638,341, 4,786,527 and pending U.S. Application Serial No. 86/651,988.

14. Furthermore, pursuant to 15 U.S.C. § 1065, the Company's exclusive right to use the UGLY Marks in commerce in connection with the services covered by U.S. Registration Nos. 2,999,705, 2,935,916, 2,761,385, 2,827,136, 2,794,480, 2,797,374, 2,797,429, 2,982,363,

_____

2,999,978, 3,188,593, 3,185,390, 3,350,752, 3,438,769, 3,263,978, and 3,099,814 has become incontestable.

15. HomeVestors has engaged in extensive promotion of its products and services using the UGLY Family of Marks, and its customers and others have come to associate this mark with the source or origin of HomeVestors's services and products. Among the numerous avenues of marketing HomeVestors uses to promote its products and services is through its Internet web site, which web site is or has been linked to a variety of Uniform Resource Locators, commonly known as domain names ("URLs") owned by HomeVestors such as, for example, "WEBUYUGLYHOUSES.COM," "WEBUYUGLYHOUSES.NET," "WEBUYUGLYHOUSES.INFO," "WEBUYUGLYHOUSES.ORG," "WEBUYUGLYHOUSES.US," "WEBUYUGLYHOUSES.BIZ," "WEBUYUGLYHOUSES.WS," "I-BUY-UGLY-HOUSES.COM," "ISELLUGLYHOUSES.BIZ," "ISELLUGLYHOUSES.NET," "ISELLUGLYHOUSES.ORG," "ISELLUGLYHOUSES.US," "SELLUGLY-HOUSES-FAST.COM," "SELLUGLYHOUSE.NET," "SELLUGLYHOUSES.COM," "SELLUGLYHOUSESFAST.COM," and "WESELLUGLYHOUSES.INFO." The web site is interactive and franchisees, potential franchisees, customers and potential customers may use the site to obtain information on HomeVestors's products and services. HomeVestors uses the UGLY Family of Marks extensively throughout its Internet web site.

16. HomeVestors has engaged in extensive promotion of its services using the UGLY Family of Marks in various and numerous marketing media, and its customers and others have come to associate the UGLY Family of Marks as the source of origin of the HomeVestors Services. The most visible marketing media HomeVestors utilizes are its ubiquitous billboards which bear the now famous stylized logo "WE BUY UGLY HOUSES." HomeVestors purchases its national outdoor advertising in accordance with local market funding by its

---

franchises, blanketing each of its markets and surrounding areas in a manner designed to ensure that the consuming public will easily recognize and remember this primary trade and business identifier in association with a telephone number and website addresses which is used nationally. HomeVestors places numerous billboards in high traffic areas where consumers and their potential customers are most likely to see them.

17. The following table illustrates the total number of advertising dollars spent on all outdoor advertising, including but not limited to, bulletins, posters, transit shelters, benches, and buses from 2009 to 2014 by HomeVestors to market its products and services through the UGLY Family of Marks:

|  | **2009** | **2010** | **2011** | **2012** | **2013** | **2014** |
|---|---|---|---|---|---|---|
| Number of Outdoor Ad Units | 3,404 | 3,127 | 3,064 | 3,832 | 5,674 | 8,516 |
| Total Outdoor Ad Dollars Spent | $1,657,304 | $1,511,089 | $1,440,367 | $1,826,066 | $2,641,711 | $3,912,875 |

18. In addition to outdoor advertising, HomeVestors also advertises extensively in other media, including the internet, direct mail, and television commercials. Between 2009 and 2014, the amount expended by HomeVestors and its franchisees totaled $31,514,988. It is anticipated that over approximately $30,000,000 will be spent on multimedia advertising in 2015.

19. HomeVestors's long-standing, continuous, broad-based and conspicuous use of numerous principal trademarks and business identifiers with the common suffix "UGLY HOUSES" has established a family of marks around the common family surname of "UGLY HOUSES." This family surname is recognized by consumers and the public nationwide as an

___

identifying trademark in and of itself when it appears in a composite with other words, such as "WE BUY," "WE SELL," "I BUY" and "I SELL." Many of the UGLY Family of Marks are also "famous" marks within the definition of 15 U.S.C. §1125. Defendant's use of the "UGLY HOUSES" surname in connection with real estate goods and services is therefore likely to cause confusion, mistake, and deception in the mind of the public, and with HomeVestors current and potential customers.

20. HomeVestors uses the UGLY Family of Marks in at least forty-four (44) states throughout the United States, including Texas, where HomeVestors first began and where it has its headquarters.

21. HomeVestors is the exclusive owner of the UGLY Family of Marks.

**B.  Defendant's Services**

22. Defendant Thompson operates a website at "ROBYNTHOMPSON.COM," advertising, among other things, services and events related to the real estate business, and including offering technical assistance in purchasing, financing and selling residential real estate.

23. Defendant is in the business of, among other things, buying and selling residential real estate, and providing related real estate services. Since at least 2012, Defendant has advertised, offered for sale and sold her services on the internet and in newsletters using designations incorporating "UGLY HOUSES" (the "Infringing Marks"), including use in taglines such as "TURNING UGLY HOUSES INTO POTS OF GOLD," and "HOW TO TURN…UGLY HOUSES INTO FAST CASH."

24. Defendant is also in the business of providing real estate related services identical with those offered by HomeVestors, particularly services relating to the acquisition and sale of residential real estate (the "Defendant's Services"). The Defendant's Services are directed to

___

owners of real estate and specifically to residential real estate owners, the same class of consumers who are the purchasers of HomeVestors's Services.

### C. Defendant's Infringement of the UGLY Family of Marks, Agreement Not to Infringe, and Breach

25.     As explained above, Defendant began advertising, offering for sale, and selling her services using the Infringing Marks long after HomeVestors first adopted and began using the UGLY Family of Marks.  Furthermore, Defendant's use of the Infringing Marks has been without HomeVestors's consent.

26.     Upon learning that Defendant was using the Infringing Marks, on July 10, 2012 HomeVestors made demand in writing that Defendant cease using the Infringing Marks on the grounds of, among other things, their confusing similarity to the UGLY Family of Marks.

27.     After receipt of such demand, on August 16, 2012, Defendant sent a signed letter to HomeVestors, stating, "I will not use the words Ugly Houses any further."  Defendant also signed a separate statement attached to the August 16, 2012 letter stating as follows:

> The undersigned covenants to take the following actions immediately (1) cease all use of the term "Ugly Houses", any similar marks, and any names incorporating the Ugly Houses Marks or any derivation thereof; and (2) agree to never use the term "Ugly Houses" or any derivation thereof, in any website, marketing materials, domain name, or the meta tags of any domain name in the future.

True and correct copies of Defendant's signed letter and attachment (together, the "2012 Letter Agreement") are attached hereto as Exhibit A to this Complaint.

28.     After the 2012 Letter Agreement, Defendant unmistakably had actual notice of HomeVestors's sole rights to the UGLY Family of Marks.  HomeVestors believed that Defendant ceased infringing activity as a result of this agreement.

29.     On information and belief, Defendant continues her infringing use of the UGLY Family of Marks in advertising for her events, such as advertising her services relating to "retailing ugly houses" at "ROBYNTHOMPSON.COM," which is a website directed to viewers

throughout the United States. Attached as Exhibit B to this Complaint are true and correct copies of examples of infringing uses of the UGLY Family of Marks at "ROBYNTHOMPSON.COM" after Defendant signed the 2012 Letter Agreement.

30. Defendant also attends Real Estate Investors Association ("REIA") programs and meetings across the country to advertise, promote and sell her services. Defendant has advertised her real estate investment and retailing services by attending numerous REIA-sponsored programs and meetings.

31. Advertisements for many of the REIA events that feature Defendant have included the phrase "UGLY HOUSES" and other designations that either infringe or are substantially similar to the UGLY Family of Marks. Attached as Exhibit C to this Complaint are true and correct copies of examples of infringing uses of the UGLY Family of Marks in connection with REIA events to promote programs involving Robyn Thompson.

32. On information and belief, Defendant has either directed or sanctioned these REIA advertisements to associate herself with the UGLY Family of Marks and substantially similar designators, including the phrase "UGLY HOUSES," despite her written agreement to not do so. Indeed, the key to the confusion intended to be created by Defendant is the "UGLY HOUSES" common element.

33. Defendant's use of the Infringing Marks has been with constructive and actual notice of HomeVestors's exclusive right to use the UGLY Family of Marks. Despite such constructive and actual notice, Defendant has intentionally infringed upon the UGLY Family of Marks by advertising and otherwise using the Infringing Marks.

34. The natural and probable consequence of Defendant's continued use of the Infringing Marks has been and will continue to be that the public and consumers will likely be confused, misled, and deceived by the similarity of the Infringing Marks to the UGLY Family of

___

Marks, and that such persons who are seeking HomeVestors's business, products and services will be mistakenly led to deal with Defendant.

35. Further, as a result, consumers who would ordinarily do business with HomeVestors have likely done business with, and are likely to continue to do business with Defendant believing they were and/or are doing business with HomeVestors, and/or that they were and/or are obtaining HomeVestors's products and services, thereby resulting in monetary damages and lost profits to HomeVestors.

36. Additionally, Defendant's infringement upon the UGLY Family of Marks has caused HomeVestors to lose control over its own reputation and goodwill, as well as other immeasurable damages.

37. For the harm and loss suffered by HomeVestors, and for the harm and loss that will continue but for intervention of this Court, HomeVestors has no adequate remedy at law. Unless Defendant is enjoined from further infringement and unfair competition, HomeVestors will suffer irreparable harm because the damages sustained will be immeasurable, unpredictable, and unending.  Moreover, the Lanham Act and applicable state law specifically provide for injunctive relief to prevent further infringement of the UGLY Family of Marks.

38. All conditions precedent to this action have occurred or been waived.

## COUNT I
## FEDERAL TRADEMARK AND SERVICEMARK INFRINGEMENT (15 U.S.C. § 1114)

39. HomeVestors realleges, and incorporates by reference, each and every allegation set forth in paragraphs 1 through 38, inclusive.

40. The above-referenced actions have caused and are likely to continue to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of HomeVestors with Defendant, or as to the origin, sponsorship or approval of Defendant's products and services by HomeVestors.

___
**PLAINTIFF'S ORIGINAL COMPLAINT– Page 10**


41. By virtue of the foregoing, Defendant has been and is continuing to engage in statutory trademark infringement in violation of 15 U.S.C. § 1114.

42. As set forth above, such infringement by Defendant has caused, and is likely to continue to cause, HomeVestors to incur substantial damages.

43. HomeVestors seeks recovery from Defendant of all amounts it is entitled to under 15 U.S.C. § 1117(a), including without limitation: (1) Defendant's profits from the sale of each product and service marketed, advertised, sold or rendered using any of the Infringing Marks; (2) all damages sustained by HomeVestors; (3) the costs of the action; and (4) an additional amount that the Court considers just.

44. Defendant's unlawful acts also have caused and continue to cause irreparable injury to Plaintiffs trade, prestige, business reputation and goodwill. HomeVestors has no adequate remedy at law for such injury and Defendant's conduct will continue unless restrained and enjoined by this Court.

## COUNT II
## FEDERAL UNFAIR COMPETITION (15 U.S.C. §§ 1125(a))

45. HomeVestors realleges, and incorporates by reference, each and every allegation set forth in paragraphs 1 through 44, inclusive.

46. Defendant's aforesaid acts and conduct constitute unfair competition and unfair trade practices under 15 U.S.C. § 1125(a).

47. HomeVestors has suffered damages as a direct and proximate result of the aforesaid unfair competition and unfair trade practices by Defendant.

48. Defendant's unlawful acts have caused and continue to cause irreparable injury to HomeVestors's trade, prestige, business reputation and goodwill. HomeVestors has no adequate remedy at law for such injury and Defendant's conduct will continue unless restrained and enjoined by this Court.

## COUNT III
## FEDERAL DILUTION (15 U.S.C. §§ 1125(c))

49. HomeVestors realleges, and incorporates by reference, each and every allegation set forth in paragraphs 1 through 48, inclusive.

50. Given the degree of inherent and acquired distinctiveness of the UGLY Family of Marks, the duration and extent of use of the UGLY Family of Marks in connection with the HomeVestors Service, the duration and extent of advertising and publicity of the UGLY Family of Marks, the geographical extent of the trading area in which the UGLY Family of Marks are used, the channels of trade for the goods or services with which the UGLY Family of Marks are used, and the degree of recognition of the UGLY Family of Marks in the trading area and channel of trade used by HomeVestors and Defendant, some or all of the UGLY Family of Marks are famous and were famous at the time Defendant engaged in her infringing acts.

51. The acts of Defendant complained of herein dilute or cause dilution of the distinctive quality of the UGLY Family of Marks, in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c). Defendant willfully intended to trade on the reputation of HomeVestors and to dilute or cause dilution of the UGLY Family of Marks.

52. Furthermore, the quality of Defendant's services is inferior to those offered by HomeVestors. Defendant's use of the Infringing Mark to market its inferior services causes a negative association by the public with the UGLY Family of Marks, which tarnishes the goodwill and reputation associated with the UGLY Family of Marks.

53. As a result of the Defendant's dilution and tarnishment of the UGLY Family of Marks, HomeVestors is entitled to the damages pursuant to the Federal Trademark Dilution Act.

## COUNT IV
## BREACH OF CONTRACT

54. HomeVestors realleges, and incorporates by reference, each and every allegation set forth in paragraphs 1 through 53, inclusive.

55. Under the 2012 Letter Agreement, Defendant agreed and covenanted not to use the UGLY Family of Marks or derivations of the UGLY Family of Marks, including the phrase, "UGLY HOUSES," in connection with the promotion of her goods and services.

56. In the time since signing the 2012 Letter Agreement, Defendant continued to use the UGLY Family of Marks or derivations thereof and protected elements of the UGLY Family of Marks, including the phrase, "UGLY HOUSES," in connection with the promotion of her real estate goods and services.

57. Defendant's continued use and directing others' use of the UGLY Family of Marks or derivations thereof and protected elements of the UGLY Family of Marks, including the phrase, "UGLY HOUSES," constitutes breach of the 2012 Letter Agreement.

58. HomeVestors has suffered damages, including to the value of its UGLY Family of Marks, goodwill and reputation, by Defendants breach.

## COUNT V
## COMMON LAW AND TEXAS STATUTORY INFRINGEMENT, UNFAIR COMPETITION AND DILUTION

59. HomeVestors realleges, and incorporates by reference, each and every allegation set forth in paragraphs 1 through 58, inclusive.

60. The foregoing acts of the Defendant constitute infringement, unfair competition, passing off, and dilution of HomeVestors's rights in that such acts permit, and will continue to permit, Defendant to use and benefit from the goodwill and reputation earned by HomeVestors to obtain an immediate customer acceptance for the real estate services offered for sale and sold by Defendant under her identical and/or confusingly similar marks on the basis of reputation not

established in Defendant's own right, and to give Defendant's services a marketability they would not otherwise have, all at HomeVestors's expense.

61. Defendant's continued offering of services under identical, nearly identical and confusingly similar marks will continue to constitute acts of infringement, unfair competition, passing off, and dilution by Defendant against HomeVestors, thereby causing irreparable harm.

62. The foregoing acts of Defendant accordingly constitute infringement, dilution, and unfair competition in violation of applicable state statutes, Texas Business and Commercial Code §§ 16.102, 16.103, *et seq.*, and common law.

## COUNT VI
## UNJUST ENRICHMENT

63. HomeVestors realleges, and incorporates by reference, each and every allegation set forth in paragraphs 1 through 62, inclusive.

64. Defendant has taken and infringed upon the HomeVestors Marks for her own commercial benefit without compensation to HomeVestors. As a result, Defendant has unjustly profited from the goodwill and reputation associated with the HomeVestors Marks upon which Defendant unlawfully infringed. Accordingly, HomeVestors seeks a full accounting and recovery from Defendant for the benefits and profits she has unjustly received.

## COUNT VII
## APPLICATION FOR INJUNCTIVE RELIEF

65. HomeVestors realleges, and incorporates by reference, each and every allegation set forth in paragraphs 1 through 64, inclusive.

66. As set forth above, the Defendant's actions in violation of the Lanham Act, and her violation of applicable state law have caused, and are continuing to cause, substantial and irreparable damage to HomeVestors for which there is no adequate remedy at law. HomeVestors is, therefore, entitled to an injunction preventing the Defendant's continued infringement,

___

including an injunction against the Defendant's continued use of the Infringing Marks. The Defendant has improperly used and will continue to improperly use the Infringing Marks unless prevented from doing so by this Court. While the Defendant illegally uses the Infringing Marks, HomeVestors will continue to lose control over its own reputation and goodwill and the public and consumers will continue to likely be confused, misled, and deceived by the similarity of the Infringing Marks to the UGLY Family of Marks.

67. HomeVestors requests that the Defendant, her employees, representatives, agents, partners and others acting in concert with her be enjoined from: (1) advertising, marketing, selling or rendering any product or service or otherwise using or continuing to use the Infringing Marks or any other mark that is confusingly similar to the UGLY Family of Marks, (2) representing to any other person or entity that she has authority to use the UGLY Family of Marks, and (3) representing to any other person or entity that Defendant or her products and services are in any manner associated with, connected to, related to, sponsored by, affiliated with, endorsed by, approved by or recommended by HomeVestors.

## COUNT VIII
## ATTORNEYS' FEES

68. HomeVestors realleges, and incorporates by reference, each and every allegation set forth in paragraphs 1 through 68, inclusive.

69. Due to Defendant's wrongful conduct as alleged herein, HomeVestors has retained the undersigned law firm to represent it and prosecute this action on its behalf, and has agreed to pay their reasonable attorneys' fees and expenses for prosecuting this action. Because Defendant's actions have been willful and deliberate, this is an exceptional case for which attorneys' fees are recoverable under 15 U.S.C. § 1117(a) and/or applicable state law, pursuant to which HomeVestors requests an award of its attorneys' fees, costs, and expenses incurred in prosecuting this lawsuit.

___

70. The Letter Agreement constitutes a valid contract that has been breached by Defendant causing monetary damage to HomeVestors. Pursuant to Texas Civil Practice and Remedy Code Section 38.001, HomeVestors requests an award of its attorneys' fees, costs, and expenses incurred in prosecuting this lawsuit.

## JURY DEMAND

71. HomeVestors respectfully demands a jury on those issues so triable.

## RELIEF SOUGHT

WHEREFORE, HomeVestors respectfully requests that Defendant be cited to appear and answer this suit, and that HomeVestors be awarded the following relief from Defendant:

(a) That Defendant and all persons acting in concert with her be preliminarily and permanently enjoined from:

    (i) advertising, marketing, selling or rendering any product or service under or otherwise using or continuing to use the Infringing Marks or any other mark that is confusingly similar to the UGLY Family of Marks,

    (ii) representing to any other person or entity that she has authority to use the UGLY Family of Marks, and

    (iii) representing to any other person or entity that Defendant or her products and services are in any manner associated with, connected to, related to, sponsored by, affiliated with, endorsed by, approved by or recommended by HomeVestors;

(b) That Defendant be required to report to HomeVestors at least every 30 days her compliance with the preliminary injunction and the permanent injunction;

(c) That HomeVestors receive and recover from Defendant all of:

___

    (i)  Defendant's profits from each product and service marketed, advertised or sold using the Infringing Marks;

    (ii)  all damages sustained by HomeVestors;

    (iii)  costs of court;

    (iv)  statutory damages allowed by the Lanham Act and any other applicable statute; and

    (v)  any additional amount that the Court determines to be just;

(d) That HomeVestors receive and recover from Defendant HomeVestors's actual damages under applicable state statutory and common law;

(e) That Defendant be ordered to pay HomeVestors its reasonable costs, expenses, and attorneys' fees incurred in prosecuting this action, including any appeal, under 15 U.S.C. § 1117(a) and/or applicable state law;

(f) That Defendant be ordered to pay HomeVestors its reasonable attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001.

(g) That HomeVestors be awarded pre and post-judgment interest to the maximum extent allowed by law; and

(h) That HomeVestors be awarded such other and further relief to which it may be justly entitled.

___

Respectfully submitted,

s/ Joel M. Wallace
**JOEL M. WALLACE**
State Bar No. 6304223IL

SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
T 312.258.5500
F 312.258.5600

**STEPHEN L. SAPP**
State Bar No. 17647650

SCHIFF HARDIN LLP
300 Crescent Court
Suite 400
Dallas, TX 75201
T 214.981.9900
F 214.981.9901

*Attorneys for Plaintiff*
*HomeVestors of America, Inc.*

___

**PLAINTIFF'S ORIGINAL COMPLAINT– Page 18**